BYRD & COKER, plaintiffs in error, *vs.* H. R. JOHNSON & Co. *et al.*, defendants in error.

1. A contract between a factor or commission merchant and a planter, creating a lien upon the crop of the latter, for provisions furnished to make it, is not required, by the Act of 15th of December, 1866, to be in writing. The lien is a good one, between the parties and their agents and purchasers, with notice, though it be only in parol.

2. A bill filed by the factor, and sanctioned, granting a *ne exeat* against one charged to have a portion of the crop in possession, as agent of the planter, and requiring him to produce the same, that it may be subjected to the lien, ought not to be discharged on the coming in of the answer, not denying the plaintiffs' equity, except on information and belief, even though supported by an affidavit, setting up title in the affiant to the crop, especially when the affidavit does not deny notice of the lien.

Decided by JAMES M. CLARK. Chambers. Sumter County. September, 1868.

The case made by the bill is as follows: Berry Byrd & William Coker, partners and commission merchants, in Dawson, Georgia, under the style of Byrd & Coker, on the 15th of April, 1867, entered into a special contract with John C. Byrd, of Stewart county, Georgia, under the Act of the General Assembly of Georgia, approved 15th of December, 1866, to furnish to him provisions to enable him to make a crop on his plantation, in said Stewart county, i. e., they agreed to

furnish him bacon at thirty cents per pound, and corn at $2 75 per bushel, and said Byrd agreed to give them therefor a lien, under said Act, upon his crop.

Under this agreement, they furnished him with eighteen hundred and fifty-one pounds of bacon, and one hundred and sixty and two-thirds bushels of corn; furnishing it at different times, during 1867. (Of this bacon, four hundred and twenty-five pounds was delivered to Wesley Byrd, son of said John Byrd, and for it, Wesley paid Byrd & Coker.) John C. Byrd made his crop, which he could not have made without said advances. On the 7th of January, 1868, he carried four bales of cotton, of said crop, to the warehouse of H. R. Johnson & Co., Americus, Georgia, who still had possession and control of the same. Complainants were advised that said John Byrd or H. R. Johnson & Co., sold said cotton to Adolphus S. Kendrick, of said county. H. R. Johnson & Co. refused to point out said cotton, or to allow an examination of their books, so that the sheriff might levy on the same, for complainants. Therefore, complainants feared that said Kendrick would remove said cotton out of this State, and they believed that H. R. Johnson & Co. were about to remove it, and thereby defeat said lien.

They prayed that said Kendrick and the members of the firm of H. R. Johnson & Co., (Henry Johnson and Thos. Harrold,) be arrested and required to give bond and security not to remove the cotton out of this State, or to have the same forthcoming to answer the decree in this case; that *subpœna* issue to Kendrick Johnson and Harrold, requiring them to answer whether the cotton is in the warehouse, whether it was sold to Kendrick, and when, and for what, etc., and for general relief.

Judge Vason, then presiding in said county, passed an order requiring bond and security from said defendants; (in the sum of $1,000,) not to remove the cotton from said warehouse, nor from the jurisdiction of the Court, etc.

Kendrick answered the bill, saying simply, that his purchase was *bona fide*, and that he knew nothing of the claim set up by complainants.

Byrd & Coker *vs.* Johnson & Co.

The other defendants afterwards answered, (demurring therein, because said John C. Byrd was not made a party defendant to said bill.)    Henry R. Johnson answered that there was no such firm as H. R. Johnson & Co., nor any firm composed of himself and said Harrold :    He denied all knowledge of any such lien as complainants claimed, or of any such advances made by them ; said that John Byrd, on the 8th of January, 1868, brought to the warehouse of Harrold, Johnson & Co., (composed of said Johnson and Harrold, and N. B. Harrold,) in Americus, four bales of cotton, representing that they were the property of James W. Harris, of Webster county, Georgia, and requested them to sell the same and pay the proceeds to him, for Harris, as he was acting as agent for Harris ; that he, Johnson, being busy, requested said N. B. Harrold to sell it: he did sell it, and paid the proceeds to John Byrd, for said Harris ; but after this litigation arose, they paid the money back to Kendrick, and kept the cotton ; this they did after they had refused to point out the cotton to the sheriff.    He further set up that Coker met John C. Byrd when he was bringing said cotton to Americus, and yet gave no notice to those who might purchase, of any lien thereon ; that on the 2d of January, 1868, John C. Byrd had brought five bales of cotton to said warehouse, which was sold and shipped off on the 6th of January, 1868 ; that no such lien was recorded in Stewart county, and that Byrd denies that complainants have, or ever had, any such lien, and he and Harris both, affirm that said four bales of cotton belonged to said Harris.

For these reasons, he did not believe there was any such lien, and if there was, it should not affect the defendants.

The separate answer of the Harrolds was substantially the same as that of Johnson.

They obtained from said Harris his affidavit, stating that said cotton was "the individual property of deponent, and not the property of said John C. Byrd, and that said cotton was, and is, free from any lien in favor of said Byrd & Coker, or any other party or parties whatsoever, and that the only

possession or control which said John C. Byrd had of the said cotton, was as the agent of this deponent."

Upon these answers, and this affidavit, Judge Clark, upon motion of defendants, set aside said order, and that is assigned as error.

W. A. HAWKINS for plaintiffs in error.

GOODE AND CARTER for defendants in error.

McCAY, J.

1. The first section of the Act of 15th December, 1866, which enacts that *landlords* may have a lien, etc., does require that it shall be by "special contract in writing." But the second section, which relates to factors and merchants, only says that the lien may be upon such terms as may be agreed upon between the parties. Why this difference should be made, we confess we do not see. Such, however, is clearly the will of the Legislature as deduced from its words.

2. Upon the demurrer, the facts of the bill are admitted, and this bill clearly charges the agreement, the furnishing of the supplies, the making of the cotton, and that four bales of it, or its proceeds, are in the hands of H. R. Johnson & Co., the agents of the planter. If the lien is good at all, it is good against the maker of it, and his agents and purchasers, with notice. The demurrer, then, ought to have been overruled.

Ordinarily this Court will hesitate greatly before it will interfere with an order of a judge dissolving a temporary injunction. In this case, however, the dissolution is in fact a total denial of the complainants' rights. If this writ is discharged, he is, according to his bill, remediless. We do not think, therefore, that, under the answer and affidavit, the writ ought to have been discharged. The affidavit did not pretend that Harris was not fully aware of the complainants' lien, whilst the answer stated nothing material which was responsive to the bill, except upon mere hearsay and belief. We think the case ought to be held for trial, when the par-

ties can be fully heard, and their rights be determined by a jury.

There may arise, on the trial, a very interesting question under this statute. The statute provides that the liens therein provided for shall be enforced in the same way and manner that liens are now enforced against steamboats in this State. It has been contended that this gives to the factor a preferred lien; that like the lien of steamboat employers, it is of "the highest dignity." We make no decision, at present, upon this point. This case, in its present aspect, does not require it, and the question is one of great importance. When it is properly made, will be time enough to decide it.

Judgment reversed.